UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

VICTOR JEROME BELL,
     Petitioner,

vs.                           Case No.:  3:20cv5894/LAC/EMT

DEPARTMENT OF CORRECTIONS,
     Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner Victor Jerome Bell (Bell) filed an amended petition for writ of habeas corpus under 28 U.S.C. § 2254 (ECF No. 6).  Respondent (the State) filed an answer (ECF No. 24) and relevant portions of the state court record (ECF Nos. 17-1 through 17-13).  Bell filed a reply and then an amended reply (ECF Nos. 40, 42).  Bell also filed a motion for evidentiary hearing and motion for new trial (ECF Nos. 44, 45).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B)–(C) and Fed. R. Civ. P. 72(b).  After careful consideration of the issues presented by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rule 8(a), Rules Governing Section 2254 Cases.  It is

further the opinion of the undersigned that the pleadings and attachments before the

court show that Bell is not entitled to habeas relief.

I.    RELEVANT BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established

by the state court record (*see* ECF Nos. 17-1 through 17-13).[1]  Bell was charged in

the Circuit Court in and for Escambia County, Florida, Case No. 2012-CF-1842,

with two counts of Aggravated Battery with Great Bodily Harm and with a Weapon

(Counts 1 and 2) and one count of Resisting an Officer without Violence (Count 3)

(ECF No. 17-1 at 30 (Amended Information)).  Following a jury trial on February

21, 2013, Bell was found guilty as charged on Counts 1 and 3, and not guilty on

Count 2 (ECF No. 17-3 at 31 through 17-4 at 135 (trial transcript); ECF No. 17-2 at

209 (verdict)).  On March 21, 2013, the court sentenced Bell to eighteen years in

prison on count 1 and a concurrent term of 364 days of incarceration on Count 3

(ECF No. 17-1 at 212–41 (sentencing transcript); ECF No. 17-2 at 11–19

(judgment)).  Bell's appellate counsel filed a notice of appeal (ECF No. 17-2 at 32–

33 (notice of appeal)).  On April 1, 2013, Bell filed a pro se motion for post-

conviction relief (ECF No. 17-12 at 81–86 (motion)).  On June 17, 2013, the trial

---

[1] Citations to the state court record refer to the document numbers and page numbers assigned by the court's electronic filing system.

court dismissed the motion without prejudice for lack of jurisdiction (ECF No. 17-12 at 88–89 (order)).

The parties filed appellate briefs in the Florida First District Court of Appeal (First DCA), Case No. 1D13-1599 (*see* ECF No. 17-4 at 137–56 (Bell's initial brief); ECF No. 17-4 at 158–88 (State's answer brief)).   The First DCA affirmed the judgment per curiam without written opinion on July 16, 2014 (ECF No. 17-4 at 190 (decision)).  *Bell v. State*, 147 So. 3d 981 (Fla. 1st DCA 2014) (Table).  The mandate issued August 1, 2014 (ECF No. 17-4 at 193 (mandate)).

On November 21, 2014, Bell filed a motion in the state circuit court, which the court construed as a motion for post-conviction relief under Rule 3.850 of the Florida Rules of Criminal Procedure (ECF No. 17-4 at 208–12 (Rule 3.850 motion)).  On January 28, 2015,[2] the circuit court struck the motion for failing to include an oath and as insufficiently pled, with leave to file an amended motion within sixty days (ECF No. 17-4 at 213–14 (order)).  Bell filed a timely amended motion (ECF No. 17-4 at 215 through 17-5 at 7 (amended Rule 3.850 motion)), and then a second amended Rule 3.850 motion (ECF No. 17-5 at 8–20 (second amended Rule 3.850 motion)).  The court struck the motions as insufficiently pled, without prejudice to

---

[2] References to the dates of circuit court orders are to the date the orders rendered, rather than the dates they were signed.

Bell's filing a third amended motion within sixty days (ECF No. 17-5 at 23–24 (order)).  Bell filed a third amended Rule 3.850 motion (ECF No. 17-5 at 29–61 (third amended Rule 3.850 motion)).  The circuit court summarily denied Bell's third amended Rule 3.850 motion on December 22, 2015 (ECF No. 17-5 at 62–68 (order)).  Bell appealed the decision to the First DCA, Case No. 1D16-0764 (ECF No. 17-5 at 109 (notice of appeal); ECF No. 17-5 at 118 through 17-6 at 14 (Bell's initial brief)).  The First DCA affirmed the circuit court's decision per curiam without written opinion on May 31, 2016 (ECF No. 17-6 at 20 (decision)).  *Bell v. State*, 194 So. 3d 1021 (Fla. 1st DCA 2016) (Table).  The mandate issued August 5, 2016 (ECF No. 17-6 at 45 (mandate)).

On December 9 and 15, 2015, Bell filed motions to correct sentence in the circuit court, pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure (ECF No. 17-6 at 58–65, 100–09 (Rule 3.800(a) motions)).  The circuit court denied the motions in an order rendered on March 9, 2016 (ECF No. 17-6 at 68–71 (order)).  Bell appealed the decision to the First DCA, Case No. 1D16-2309 (ECF No. 17-6 at 112–30 (Bell's initial brief)).  The First DCA affirmed the circuit court's decision per curiam without written opinion on October 24, 2016 (ECF No. 17-6 at 134 (decision)).  *Bell v. State*, 202 So. 3d 407 (Fla. 1st DCA 2016) (Table).  The mandate issued November 21, 2016 (ECF No. 17-6 at 137 (mandate)).

On March 9, 2016, Bell filed an Emergency Extraordinary Petition for Writ of Habeas Corpus in the state circuit court, challenging his sentence (ECF No. 17-11 at 159–71 (petition)).  On July 1, 2016, Bell filed another Rule 3.850 motion in the state circuit court (ECF No. 17-8 at 63–79 (Rule 3.850 motion)).  Bell filed an amended Rule 3.850 motion on August 23, 2016 (ECF No. 17-8 at 80–107 (amended Rule 3.850 motion)).  The circuit court struck the amended Rule 3.850 motion as insufficiently pled, without prejudice to Bell's filing a second amended motion within sixty days (ECF No. 17-9 at 15–17 (order)).  On October 21, 2016, Bell filed a "Supplemental" Rule 3.850 motion (*see* ECF No. 17-9 at 18–72 and ECF No. 17-11 at 173 through 17-12 at 53 ("Supplemental" Rule 3.850 motion)), followed by yet another Rule 3.850 motion on December 11, 2016 (ECF No. 17-9 at 73–89 (Rule 3.850 motion)).  On January 3, 2017, the circuit court entered a final ruling denying the sentencing claim presented in the Emergency Extraordinary Petition for Writ of Habeas Corpus as repetitive and without merit (ECF No. 17-9 at 90–92 and ECF No. 17-12 at 58–60 (order)).  In the same order, the circuit court struck Bell's remaining claims (challenging his conviction) as insufficiently pled, without prejudice to Bell's filing an amended Rule 3.850 motion within sixty days (*id.* (order)).  Bell appealed the circuit court's order of January 3, 2017, to the First DCA, Case No. 1D17-0500 (ECF No. 17-7 at 144 (notice of appeal)).  The First DCA dismissed the appeal at

Bell's request on April 6, 2017 (*see* ECF No. 17-7 at 133–34 (First DCA's order to show cause); ECF No. 17-7 at 136–38 (Bell's motion to voluntarily dismiss); ECF No. 17-7 at 140 (First DCA's order of dismissal)). The First DCA denied Bell's motion for reinstatement on January 8, 2018 (ECF No. 17-7 at 147–51 (Bell's motion for reinstatement); ECF No. 17-7 at 142 (First DCA's order)).

Bell filed several petitions and motions in the circuit court, amending and replacing his previously filed Rule 3.850 motions (ECF No. 17-9 at 96 through ECF No. 17-10 at 111 (Bell's petitions and motions)). On April 19, 2017, the circuit court denied the petitions and motions as successive (ECF No. 17-10 at 112–15 (order)). Bell appealed the decision to the First DCA, Case No. 1D17-2370 (ECF No. 17-10 at 168 (notice of appeal)). The First DCA dismissed the appeal on March 9, 2018 (ECF No. 17-10 at 171–72 (order)). *Bell v. State*, 255 So. 3d 900 (Fla. 1st DCA 2018) (Mem). The First DCA denied Bell's motions for rehearing, clarification, and reconsideration (ECF No. 17-10 at 185, 187 (orders)). On May 1, 2018, the First DCA issued an order barring Bell from future pro se filings concerning the criminal judgment:

> Due to Appellant's apparent abuse of the legal process by his repeated pro se filings attacking his judgment and sentence, the Court issued an order directing Appellant to show cause why he should not be prohibited from future pro se filings. *See State v. Spencer*, 751 So.2d 47, 48 (Fla. 1999) (requiring that courts "first provide notice and an opportunity to respond before preventing [a] litigant from bringing

further attacks on his or her conviction and sentence"). Appellant's response to the show cause order does not provide a legal basis to prohibit the imposition of sanctions.

Because Appellant's continued and repeated attacks on his judgment and sentence have become an abuse of the legal process, we hold that he is barred from future pro se filings in this Court concerning Escambia County Circuit Court case number 2012-CF-1842. The Clerk of the Court is directed not to accept any future filings concerning this case unless they are filed by a member in good standing of The Florida Bar. Appellant is warned that any filings that violate the terms of this opinion may result in a referral to the appropriate institution for disciplinary procedures as provided in section 944.279, Florida Statutes. *See* Fla. R. App. P. 9.410.

(ECF No. 17-10 at 189–90 (order)). *Bell v. State*, 241 So. 3d 983 (Fla. 1st DCA 2018) (Mem). The mandate issued December 18, 2019 (ECF No. 17-10 at 192 (mandate)).

Meanwhile, on July 28, 2016, Bell filed a petition for writ of habeas corpus in the First DCA, Case No. 1D16-3506, alleging ineffective assistance of appellate counsel (ECF No. 17-6 at 139 through 17-7 at 9 (state habeas petition)). Bell subsequently filed an amended petition (ECF No. 17-7 at 22–62 (amended habeas petition)). The First DCA denied the petition on July 25, 2017 (ECF No. 17-7 at 117 (opinion)). *Bell v. State*, 228 So. 3d 552 (Fla. 1st DCA 2017) (Table). The court denied Bell's motions for rehearing on January 22, 2018 (ECF No. 17-7 at 123 (order)). Bell filed a Notice to Invoke Discretionary Jurisdiction in the Florida Supreme Court, Case No. SC18-249 (ECF No. 17-7 at 125–29 (notice)). On

February 14, 2018, the Florida Supreme Court dismissed the case for lack of jurisdiction (ECF No. 17-7 at 131 (order)). *Bell v. State*, No. SC18-249, 2019 WL 897397, at *1 (Fla. Feb. 14, 2018).

Additionally, on January 6, 2017, Bell filed a pro se Petition for Writ of Mandamus in the state circuit court, requesting that the court enter an order compelling his former appellate counsel to provide him with documents related to his case (ECF No. 17-7 at 166 through ECF No. 17-8 at 7 (petition and attachments)). The circuit court dismissed the petition on March 10, 2017, without prejudice to Bell's initiating a mandamus action in the court's civil division (ECF No. 17-8 at 8–9 (order)). Bell appealed the order to the First DCA, Case No. 1D17-1652 (*see* ECF No. 17-8 at 10–12 (notice of appeal); ECF No. 17-8 at 21–28 (Bell's amended initial brief))). The First DCA affirmed the circuit court's ruling per curiam without written opinion on August 8, 2018 (ECF No. 17-8 at 43–44 (decision)). *Bell v. State*, 250 So. 3d 628 (Fla. 1st DCA 2018) (Table). The mandate issued September 5, 2018 (ECF No. 17-8 at 46) (mandate)).

On April 24–25, 2017, Petitioner filed two pro se Motions to Compel Rulings and a Motion to Hear and Rule in the state circuit court (ECF No. 17-11 at 2–21 (motions)). On May 12, 2017, the circuit court denied the motions "[b]ecause the motions for which Defendant seeks rulings have been resolved by previous court

orders . . . ." (ECF No. 17-11 at 22–23 (order and attachments)).  Bell appealed the

order to the First DCA, Case No. 1D17-2737 (ECF No. 17-11 at 35 (notice of

appeal); ECF No. 17-11 at 40–54 (Bell's initial brief)).  The First DCA dismissed

the appeal on September 15, 2017, due to Bell's failure to respond to a show cause

order and failure to pay the filing fee or submit an order of insolvency (ECF No. 17-

11 at 59) (order)).  The First DCA denied Bell's motion for reconsideration on

December 20, 2017 (ECF No. 17-11 at 65 (order)).

On June 23, 2017, Bell filed a petition for writ of habeas corpus in state circuit

court (ECF No. 17-12 at 65–69 (petition)).  The circuit court dismissed the petition

as successive on July 28, 2017 (ECF No. 17-12 at 71–72 (order)).  Bell appealed the

order to the First DCA, Case No. 1D17-3807 (ECF No. 17-11 at 71 (notice of

appeal)).  The First DCA dismissed the appeal on October 24, 2017, due to Bell's

failure to file a proper response to the court's previous order (ECF No. 17-11 at 67,

69 (orders)).

On August 30, 2017, Bell filed a petition in the state circuit court (*see* ECF

No. 17-7 at 165 (progress docket report)).  On August 31, 2017, the circuit court

issued an order directing Bell to show cause why he should not be prohibited from

filing any further pro se petitions, pleadings, or motions in the criminal case (*see*

ECF No. 17-13 at 8–9 (order referencing show cause order)).  Bell responded to the

show cause order (*see id.*).  On November 27, 2017, the circuit court issued an order prohibiting Bell from filing any further pro se petitions, pleadings, motions, or other filings challenging his judgment or sentence in Case No. 2012-CF-1842 (*id.* (order)). The court directed the clerk of court to reject any filings challenging Bell's judgment or sentence unless they were filed by a member in good standing of The Florida Bar (*id.*).

On April 19, 2018, Bell filed a pro se "Extraordinary Writ Petition Amend to Judicial Notice" in the First DCA, Case No. 1D18-1742 (ECF No. 17-11 at 73–96 (petition)).[3]  On June 21, 2018, the First DCA court dismissed the petition as unauthorized, citing *Baker v. State*, 878 So. 2d 1236 (Fla. 2004) (ECF No. 17-11 at 99–100 (order)).  *Bell v. State*, 249 So. 3d 773 (Fla. 1st DCA 2018) (Mem).

On February 20, 2019, Bell filed correspondence in the state circuit court, challenging his conviction and sentence (ECF No. 17-12 at 91–98 (letter)).  The court ordered the "motion" stricken on March 29, 2019, in accordance with its order of November 27, 2017, prohibiting Bell from filing any further pro se pleadings (ECF No. 17-13 at 6–7 (order)).

---

[3] Bell filed this pleading prior to the First DCA's order of May 1, 2018, prohibiting Bell's pro se filings.

Thereafter, Bell continued to file several additional pro se pleadings in the state circuit court, including: (1) a petition for writ of habeas corpus on March 11, 2020 (ECF No. 17-12 at 101–15 (petition)); (2) a motion for appointment of counsel on June 4, 2020 (ECF No. 17-12 at 131–42 (motion and attachments)); (3) an "addendum" to his habeas petition on June 10, 2020 (ECF No. 17-12 at 144–45 (addendum)); (4) a "Motion to Dismiss Charge" on June 10, 2020 (ECF No. 17-12 at 148–53 (motion and attachments)); and (5) a motion requesting a copy of his sentencing guidelines scoresheet on July 8, 2020 (ECR No. 17-12 at 156 through ECF No. 17-13 at 3 (motion)). The state circuit court's docket reflects that the clerk did not refer any of these pleadings to the court due to the filing restrictions imposed on November 27, 2017 (*see* ECF No. 1 at 2 (progress docket report)).

Bell commenced this federal habeas action on October 15, 2020 (*see* ECF No. 1 (petition)). Bell filed an amended petition (the operative pleading) on January 4, 2021 (ECF No. 6 (amended petition)).

II.    STANDARD OF REVIEW

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United

States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[4]  Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003).  After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law.  The adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases.  *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding

---

[4] Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537

U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA [the Antiterrorism and Effective Death Penalty Act of 1996] is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 473–74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has often emphasized that a state prisoner's burden under § 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S. at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L. Ed. 2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n.5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for

obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 102–03 (emphasis added).

A federal court may conduct an independent review of the merits of a petitioner's claim only if it first finds that the petitioner satisfied § 2254(d).  *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007).  Even then, the petitioner must show that he is in custody "in violation of the Constitution or laws and treaties of the United States," *see* 28 U.S.C. § 2254(a), and that the constitutional error resulted in "actual prejudice," meaning, the error "had a substantial and injurious effect or influence in determining the jury's verdict," *see Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal quotation marks and citation omitted).

## III.    BELL'S CLAIMS

### A.    Ground One:  "State Attorney suppress [sic] evidence defense counsel could used [sic] to impeach State witness."

Bell asserts the prosecutor suppressed evidence favorable to the defense, in violation of his due process rights and *Brady v. Maryland*, 373 U.S. 83 (1963) (ECF No. 6 at 9).  Bell asserts there is a "great possibility" the outcome of his trial would have been favorable to him if the "suppressed evidence" had been made available to the defense prior to trial (*id.*).  Bell states he did not present this claim on direct

appeal due to "attorney oversight" (*id.* at 9).  Bell asserts he presented this claim in his first Rule 3.850 proceeding and his post-conviction appeal to First DCA, Case No. 1D16-0764 (*id.* at  9–10).

Bell did not identify the "suppressed evidence" in his amended § 2254 petition, but he did so in his amended reply (ECF No. 42 at 18–23).  Bell asserts Gary Johnson, the victim of Count 1, provided a pre-trial statement to Lisa Cutler Alverson, a detective with the Pensacola Police Department (PPD), as described on page six of Alverson's eight-page offense report (*id.* at 18).  Bell attached page six of the offense report to the operative pleading in his first Rule 3.850 proceeding (*see* ECF No. 17-5 at 50).  Bell asserts Gary Johnson's pre-trial statement was not provided to defense counsel, and he (Bell) did not discover of it until March 17, 2015 (*see id.* at 18–20).  Bell asserts Johnson's pre-trial statements conflict with his trial testimony and could have been used to impeach his testimony (*id.*).

Bell also asserts he discovered "new exculpatory evidence" after trial, specifically, a statement from Gail Jerome Brand essentially stating that Bell hit Gary Johnson with a bat in self-defense (*see* ECF No. 42 at 18–20).  Bell submitted a copy of Brand's statement in the Rule 3.850 proceeding (*see* ECF No. 17-5 at 75). Brand's statement is dated August 24, 2013 (six months after Bell's trial) (*id.*).  The

statement is signed and notarized but not sworn (*id.*).  Bell asserts in his sworn Rule

3.850 motion:

> It is obvious that this witness was not known to anyone because no one had knowledge that this witness had observed the events that had taken place outside of the home.  The witness came forward after the defendant's trial upon being informed by a friend that the defendant had received a prison sentence as a result of the altercation that the witness observed and thought was self defense.  The witness then sent a sworn affidavit and it was received by the defendant while he was in the reception center.

(ECF No. 17-5 at 71).  Bell asserts Brand's statement shows that Gary Johnson's

trial testimony was false (*see* ECF No. 42 at 18–19).  Bell contends that, more likely

than not, no reasonable juror would have convicted him in light of Brand's testimony

(*id.*).

The State contends Bell failed to exhaust Ground One (ECF No. 24 at 12–14).

The State asserts Bell presented a somewhat similar "*Brady*" claim in Ground Six of

his Third Successive Motion for Postconviction Relief (the operative pleading in

Bell's first Rule 3.850 proceeding); however, Bell failed to cite *Brady* or argue any

federal constitutional grounds for his claim in the post-conviction appeal to the First

DCA (*id.*).  The State contends any attempt by Bell to return to state court to exhaust

this claim would be futile; therefore, the claim is procedurally defaulted (*id.*).

The State alternatively argues that the state court adjudicated the merits of

Bell's *Brady* claim (ECF No. 24 at 58).  The State contends Bell has not established

that the state court's adjudication of the claim was contrary to or an unreasonable application of clearly established federal law, or that the state court's adjudication was based upon an unreasonable determination of the facts in light of the evidence presented in the post-conviction proceeding (*id.* at 58–61).

### 1. Newly Discovered Evidence Claim—Gail Jerome Brand's statement

To the extent Bell asserts he is entitled to federal habeas relief because newly discovered evidence, i.e., Gail Brand's post-trial statement, demonstrates Bell's actual innocence, his claim is not cognizable.

A claim of newly discovered evidence is not a cognizable ground for federal habeas relief absent an independent constitutional violation occurring in the state criminal proceeding.[5] *See Herrera v. Collins*, 506 U.S. 390, 400 (1993); *Townsend v. Sain,* 372 U.S. 293, 317 (1963) ("[T]he existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus."), *overruled on other grounds*, 504 U.S. 1 (1992); *see also Jordan v. Sec'y, Dep't of Corr.*, 485 F.3d 1351, 1356 (11th Cir. 2007) (explaining, after declining to consider freestanding claim of actual innocence because it did not fall

---

[5] Bell's *Brady* claim does not extend to Gail Brand's statement. As previously noted, Bell stated in his sworn state court pleading that Gail Brand "was not known to *anyone*" and "came forward after the defendant's trial" (*see* ECF No. 17-5 at 71) (emphasis added).

within certificate of appealability order, "our precedent forbids granting habeas relief based upon a claim of actual innocence, anyway, at least in non-capital cases"); *Brownlee v. Haley*, 306 F.3d 1043, 1065 (11th Cir. 2002) ("It is not our role to make an independent determination of a petitioner's guilt or innocence based on evidence that has emerged since the trial.") (citing *Herrera*); *Swindle v. Davis*, 846 F.2d 706, 707 (11th Cir. 1988) ("Newly discovered evidence which goes only to the guilt or innocence of the petitioner is not sufficient to require habeas relief.").

The prohibition on freestanding claims of actual innocence in a habeas petition respects the nature of our federal system:  "Federal courts are not forums in which to relitigate state trials."  *Herrera*, 506 U.S. at 401 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983)).  When reviewing a habeas petition, federal courts "sit to ensure that individuals are not imprisoned in violation of the Constitution— not to correct errors of fact."  *Herrera*, 506 U.S. at 400.  "Few rulings would be more disruptive of our federal system than to provide for federal habeas review of freestanding claims of actual innocence."  *Id.* at 401.

A prisoner may assert a claim of actual innocence, based upon newly discovered evidence, as a gateway through which to have an otherwise procedurally barred constitutional claim heard on the merits.  *See Sawyer v. Whitley*, 505 U.S. 333, 338–39 (1992); *see also Herrera*, 506 U.S. at 404.  This "gateway" is known

as the "fundamental miscarriage of justice exception." *Herrera*, 506 U.S. at 404. However, the Supreme Court has never held that the exception extends to freestanding claims of actual innocence. *Id.* at 404–05.

In Ground One, Bell does not assert his "newly discovered evidence" claim to overcome a procedural bar; instead, he argues he is entitled to habeas relief because newly discovered evidence shows that his conviction is factually or legally incorrect (i.e., that he was not the aggressor and acted in self-defense). This claim is not cognizable and thus does not entitle Bell to federal habeas relief.

To the extent Bell asserts his newly discovered evidence claim as a gateway through which to obtain federal review of any procedurally barred claims, the court will discuss it *infra*.

### 2. *Brady* Claim

Bell's *Brady* claim is based upon the allegedly undisclosed pre-trial statement of Gary Johnson to Detective Alverson on April 21, 2012, while Johnson was in the hospital recovering from his injuries (*see* ECF No. 17-5 at 50). The State contends Bell failed to exhaust the claim, because he failed to cite *Brady* in his initial brief in the post-conviction appeal. However, the state court record shows that Bell cited *Brady* in his initial brief to the First DCA (*see* ECF Nos. 17-5 at 121 and 17-6 at 2).

This was sufficient to exhaust the *Brady* claim concerning Gary Johnson's pre-trial statement to police, asserted in Ground One.

### a.      Clearly Established Federal Law

As recognized in *Brady* and its progeny, principles of due process dictate that, in a criminal proceeding, the prosecution must disclose evidence favorable to the defendant. *Brady*, 373 U.S. at 87; *Banks v. Dretke*, 540 U.S. 668, 691 (2004). To establish a *Brady* violation, a defendant must prove three essential elements: (1) the evidence was favorable to the defendant, either because it is exculpatory or impeaching; (2) the prosecution suppressed the evidence, either willfully or inadvertently; and (3) the suppression of the evidence resulted in prejudice to the defendant. *See Turner v. United States*, 137 S. Ct. 1885, 1893 (2017); *Banks*, 540 U.S. at 691; *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

To establish prejudice, the defendant must show that the suppressed evidence was material. *Banks*, 540 U.S. at 691. The evidence rises to the level of materiality, within the meaning of *Brady*, when there is a reasonable probability that, had the suppressed evidence been disclosed, the result of the proceeding would have been different. *Turner*, 137 S. Ct. at 1893. "A reasonable probability of a different result is one in which the suppressed evidence undermines confidence in the outcome of the trial." *Turner*, 137 S. Ct. at 1893 (internal quotation marks omitted).

In determining whether disclosure of the suppressed evidence might have produced a different result, the court must consider the "totality of the circumstances." *United States v. Bagley*, 473 U.S. 667, 683 (1985). The court must "examine the trial record, 'evaluat[e]' the withheld evidence 'in the context of the entire record,' and determine in light of that examination whether 'there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different.'" *Turner*, 137 S. Ct. at 1893 (quoting *United States v. Agurs*, 427 U.S. 97, 112 (1976), and *Cone v. Bell*, 556 U.S. 449, 470 (2009)).

### b.    Federal Review of State Court Decision

Bell presented his *Brady* claim to the state circuit court as Ground Six of his operative Rule 3.850 motion. Bell attached a copy of the relevant page of Detective Lisa Alverson's (then Cutler) offense report (page six), which included the following information:

> On 4/16/12, I contacted Johnson's nurse Shannon Bowden . . . at Baptist Hospital. Shannon stated that Johnson was stable and able to follow simple commands. Shannon stated that Johnson had a portion of his skull removed because it had be [sic] crushed. Johnson had extensive bleeding in his brain and a lot of swelling. Shannon stated Johnson had suffered several blows to the head. Shannon also stated that she discovered that Johnson has a wife and her name is Brenda Johnson [phone number].

> On 4/20/12, I went by Baptist Hospital Room #226 to check on Gary Johnson.  Johnson was in the room with his wife Brenda Johnson.  Brenda stated she was glad I had come by because Gary wanted to talk to me.  Gary was having trouble speaking due to his head injury but was able to write me a note.  Gary wrote on a piece of paper that he wanted to press charges against Bell.  I told Gary that charges were pressed on Bell and that he had been arrested.  Gary then wrote "He tried to kill me".  I made arrangements to come back on 4/21/12 and talk with Gary.
>
> On 4/21/12, I contacted Gary in his hospital room.  Gary told me that on the day of the incident victor [sic] was high and had been out all night.  Gary said victor [sic] was [sic] and Michele were [sic] involved in an argument in the hallway of the residence when Victor hit Michele.  Gary said he went outside and got the bat and threatened Victor with it because he was afraid that Victor was going to Michele [sic] again.  Gary swung the bat at Victor but didn't hit him.  Gary and Victor began to struggle over the bat and went out the front door where Victor was able to get control of the bat.  Gary then ran east from the residence.  victor [sic] caught his [sic] and struck him in the back of the head with the bat causing him to fall to the ground.  At that time Michele got on Victor's back and told him not to hit Gary again and Michele was struck with the bat.

(*see* ECF No. 17-5 at 50).

The circuit court adjudicated Bell's *Brady* claim as follows:

> Defendant raises a claim based on newly discovered evidence and a *Brady* violation.  He alleges the prosecution withheld the complete offense report by Lisa Cutler Alverson from trial counsel and Defendant and that the report includes a statement made by the victim that he got the bat and attacked Defendant with it.
>
> Defendant includes a copy of the report as an exhibit to his motion.  The report indicates Johnson stated he got the bat from outside, threatened Defendant with it and swung at him but did not hit him, and then the two of them struggled over the bat.  This statement is inconsistent with Johnson's testimony that the bat was in the house and

Defendant was the first to grab it before they struggled over it. (Exhibit D. pp. 73, 75.)

> The report may have provided evidence to impeach Johnson's testimony that Defendant was the first to grab the bat. However, Defendant fails to show the statement is material to his claim of self defense. As stated above as to Ground One, Johnson testified once Defendant gained control of the bat, Defendant came at him and Johnson tried to get away, Defendant hit him with the bat, and Johnson went down. Defendant testified once he had the bat, Johnson was no longer threatening him, Defendant swung the bat to keep Johnson from coming at him and hit Johnson three times, at least once after Johnson was down. The State argued even if the jury believed Defendant, once Defendant had the bat, the struggle was over, and he no longer needed to use force against Johnson. Even if the report were withheld, there is no reasonable probability the jury would have reached a different verdict if it had been disclosed. *See Kilgore v. State*, 55 So. 3d 487, 506–07 (Fla. 2010).

(ECF No. 17-5 at 66–67). The First DCA affirmed the circuit court's decision without written opinion. *Bell v. State*, 194 So. 3d 1021 (Fla. 1st DCA 2016) (Table). This was the last state court to adjudicate the merits of Bell's *Brady* claim.

Where, as here, the relevant state court decision on the merits (i.e., the First DCA's decision) does not come accompanied with the state court's reasons, the federal court should "look through" the unexplained decision to the last related state court decision that does provide a relevant rationale. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). The federal court should then presume that the unexplained decision adopted the same reasoning. *Id.*

To place Bell's *Brady* claim in context, the court will describe the evidence presented at trial.

Gary Johnson testified he had previously been convicted of eight felonies (ECF No. 17-3 at 100). Johnson testified that in April of 2012, he lived with his girlfriend, Michelle Caldwell, in Lanette Ogletree's house (Caldwell's mother) (*id.*). Johnson testified that Ms. Ogletree's boyfriend, Victor Bell, also lived there (*id.*). Johnson testified that on April 14, 2012, he and Ms. Caldwell had a birthday party at Ogletree's house (*id.* at 100–01). Johnson testified he left the house that night and spent the night at his daughter and granddaughter's house (*id.* at 101). Johnson testified he returned home (to Ms. Ogletree's house) the next morning (*id.*). Johnson testified that as he approached the house, he saw, through a glass storm door, Bell and Caldwell arguing (*id.* at 103). Johnson testified he saw Bell shove Caldwell several times (*id.*). He testified he tried to intervene, but "got shoved a couple of times" (*id.*). Johnson testified that he and Bell argued, "and then he [Bell] grabbed the bat" (*id.*). Johnson testified the bat was an aluminum baseball bat (*id.* at 103–04). Johnson testified:

> We was like struggling with the bat and—from trying to get control of the bat what I would say. And we backed up out of the living room out of the door still struggling with the bat. I got my hands on it, he got his hands on it, and we just struggled out the door across the street over there. And eventually I was chased around the cars out there. . . . .

> I was trying to get away.  Eventually, I thought I had tripped
> down, but I found out that he hit me in my back with the bat, and I went
> down.  And the last thing I remember is I got hit across the head.  I
> don't know how many times, but I got hit across the head.

(ECF No. 17-3 at 105–06).  Johnson testified he was on the ground when he was hit

across the head (*id.* at 106).  Johnson testified that before he "blacked out," he heard

Bell say, "I'm going to kill you, I'm going to kill you." (*id.*).  Johnson denied that

he ever swung the bat at Bell (*id.* at 107).  He also denied that he ever had sole

possession of the bat (*id.*).

On cross-examination, Johnson testified he drank five or six beers at the

birthday party but was not impaired (ECF No. 17-3 at 113).  Johnson admitted that

in his pre-trial deposition, he stated he had been drinking too much the night of the

party (*id.* at 114).  Johnson also admitted he had his hands on the bat at some point

during the struggle with Bell, but Johnson repeated that he never had sole possession

of the bat to the point that he could swing it at Bell (*id.* at 115).  Johnson reiterated

that Bell had the bat first, which Bell obtained from the side of the couch inside the

kitchen near the refrigerator (*id.* at 116).  Johnson testified Bell swung the bat at him

and missed (*id.*).  Johnson testified he grabbed the bat, and he and Bell both had their

hands on the bat at that point (*id.* at 117).  Johnson testified they both had their hands

on the bat when they went out the front door (*id.* at 117–18).  Johnson testified they

struggled with the bat outside, down the driveway, and down the street:

> We're facing each other.  Like I said, both of our hands was on the bat, and I'm backing up and he's pushing me forward.  He's pushing me far—pulling the bat back and forth, pulling the bat from me, and I'm trying to keep him from pulling it from me.  And about that time, he overpowered me, and I fell to the ground.  Before I fell to the ground, I was trying to get away from him.  I was running, and I tripped on the sidewalk and he hit me in my back with it.

(ECF No. 17-3 at 118–19).  Johnson testified Bell gained control of the bat and was coming toward him as he was trying to get away (*id.* at 120, 122).  Johnson testified:

> I remember tripping down.  He had—he had full control of the bat at that time when he first hit me.  I remember the first—the first strike of the bat was in my back, and that's when I went down and fell to the ground.  And the last thing I remember was him standing up over me and hitting me in my head and telling me he was going to kill me.

(ECF No. 17-3 at 120–22).

Michelle Caldwell testified the bat was in the house when Bell grabbed it, and Bell and Johnson started struggling over it (ECF No. 17-3 at 127–28, 142–47).  Caldwell testified that as soon as Johnson and Bell got out the front door, Johnson began running, with Bell running after Johnson, and Caldwell running after Bell (*id.* at 149–51).  Caldwell testified that Bell swung the bat and hit Johnson, and then continued to hit Johnson while Johnson was on the ground (*id.* at 151–52).  Caldwell testified that Bell hit Johnson "maybe 20 plus" times on his shoulders, arm, stomach, and "everywhere" (*id.* at 153).  She testified that Bell was "full blown swinging" (*id.*).  Caldwell testified she put her body on top of Johnson's, and Bell hit her on the

wrist with the bat (*id.* at 153–54). Caldwell testified Bell then stopped swinging the bat and went into the house (*id.* at 154).

Johnson was transported to a hospital. The medical records of his treatment were admitted into evidence (ECF No. 17-3 at 164–65).

Officer Troy Baker with the PPD testified he responded to Michelle Caldwell's 911 call on the morning of April 15, 2012 (ECF No. 17-3 at 166). Officer Baker testified he arrived at the scene and observed a male lying on the ground and a female leaning over him (*id.* at 167). Baker testified he went to the house at 1081 East Anderson and saw Bell sitting behind a closed, locked glass door (*id.*). Baker asked Bell to come out of the house to speak with him, and Bell responded that he was on the phone with his attorney and was not leaving (*id.*). Officer Baker testified he continued to ask Bell to come out of the house, and Bell came out approximately three minutes later, after Sergeant Horn arrived (*id.* at 168, 172). Baker testified he placed Bell on the ground, secured him with handcuffs, placed him in the patrol car, and transported him to the police station (*id.* at 168). Baker testified he collected the bat from the scene (*id.*).

Detective Lisa Alverson (then Cutler) testified she interviewed Bell at the police station on April 15, 2012 (ECF No. 17-3 at 182–83). Detective Alverson described the interview as follows:

> A.  I don't really remember specifically what was said, I just remember that—him having to start over.

> Q.  Okay.  And what else did he say?

> A.  He said that he had been at the house and some sort of fight ensued or argument ensued.  And he—they were in the doorway of the house, and they—him and Mr. Johnson were in a physical altercation. Mr. Bell got the bat and struck Mr. Johnson in the head one time with the bat.

(ECF No. 17-3 at 184).  Alverson testified Bell also stated that at some point "during the altercation," Ms. Caldwell jumped on his (Bell's) back to keep him from hitting Johnson with the bat (*id.* at 188–89).

The prosecutor asked Detective Alverson if she went to the hospital during her investigation (ECF No. 17-3 at 184).  Detective Alverson answered yes and then stated, "I'm going to refer to my report" after the prosecutor asked what she did at the hospital (*id.*).  Detective Alverson testified she went to the hospital the day after Bell's arrest, but Gary Johnson was not able to be interviewed (*id.*).  Alverson testified she went back to the hospital on April 20 and spoke to Johnson's wife (*id.* at 185).  Alverson testified Johnson was not capable of answering questions but wrote her a note (*id.*).  Detective Alverson testified she went back to the hospital on April 21 and interviewed Johnson (*id.* at 185–86).  Defense counsel objected, on hearsay grounds, to any testimony regarding what Johnson told Alverson and what

Johnson wrote in the note (*id.*).  The court sustained defense counsel's objections (*id.*).

Dr. Mary Benson, a trauma surgeon, testified she met Johnson in the emergency room on April 15, 2012 (EECF No. 17-3 at 191–92).  Dr. Benson testified she administered medication to make Johnson sleep and then obtained an x-ray and CT scan of his head and neck (*id.* at 193).  Dr. Benson testified the CT scan identified a very depressed fracture to the left skull with some underlying bruising to the brain (*id.*).  Dr. Benson testified Johnson also had an abrasion to his right knee (*id.* at 196).  Dr. Benson used photographs (State's composite exhibit 8) as a demonstrative aid to her testimony (*id.* at 193–94).  Dr. Benson testified Johnson was hit in the left side of his head, and the skull was fractured in "a lot of pieces" (*id.* at 195).  Dr. Benson testified the fracture extended "all the way across to the other side" (*id.*).  Dr. Benson testified she summoned a neurosurgeon and they performed surgery on Johnson (*id.*).  Dr. Benson testified it appeared that the injury to Johnson's skull was the result of one hit (*id.* at 197).

On cross-examination, Dr. Benson testified that blood and urine samples were collected from Johnson on April 15, 2012 (ECF No. 17-3 at 198).  Benson testified cocaine was detected in Johnson's urine, and alcohol was detected in his blood (*id.*).

Benson testified Johnson's blood alcohol level was "34," which was below the legal intoxication limit for driving a car, i.e., "80" (*id.* at 198–99).

The defense presented two witnesses, Lanette Ogletree and Bell.  Lanette Ogletree testified that on the night of the birthday party (the night before the incident), Michelle Caldwell (her daughter) and Gary Johnson got into an argument (ECF No. 17-4 at 18).  Ogletree testified Caldwell was going to hit Johnson with the bat, but Johnson took the bat away and put it in the front yard (*id.*).  Ogletree testified the next morning, she heard Caldwell and Bell arguing in the living room, so she walked out of her bedroom to the living room (*id.* at 21–22).  Ogletree testified she saw Gary Johnson leave the living room and go outside, and then come back into the house with the bat (*id.* at 23).  Ogletree testified Bell was sitting on the sofa, and Johnson was swinging the bat (*id.*).  Ogletree testified Johnson hit Bell with the bat on the shoulders, leg, and "upside the head" (*id.* at 23–24).  Ogletree testified the bat also hit Caldwell on the wrist (*id.* at 24).  Ogletree testified Bell got up and "went at" Johnson, and the three of them (Bell, Johnson, and Caldwell) ended up outside (*id.*).  Ogletree testified all three of them fell behind a car, and Bell got up and started running (*id.*).  Ogletree testified Bell ran across the street, and Caldwell and Johnson ran behind Bell (*id.*).  Ogletree testified Johnson was chasing Bell with the bat, and Caldwell was chasing Bell with a beer bottle (*id.* at 24–25).  Ogletree testified Bell

told Caldwell and Johnson to stop (*id.* at 25).  Ogletree testified Bell finally got the

bat from Johnson and swung and hit Johnson with it (*id.* at 25–26).  Ogletree testified

Johnson was standing when he was hit and then fell after Bell hit him behind the leg

with the bat (*id.* at 26).  Ogletree testified Caldwell was on Bell's back and ready to

hit him with the bottle, but Ogletree told her not to (*id.*).  Ogletree testified she never

saw Caldwell lie across Johnson to protect him, and she never heard Bell threaten to

kill Johnson (*id.* at 26–27).  Ogletree testified Caldwell called the police, and Bell

came into the house (*id.*).

On cross-examination, Ms. Ogletree admitted she was in a romantic

relationship with Bell and had been for ten years (ECF No. 17-4 at 28).  Ogletree

also admitted that during her pre-trial deposition she did not mention Johnson hitting

Caldwell with the bat in the house (*id.* at 31–32).  Ogletree testified Bell hit Johnson

with the bat three times, but she was somewhat inconsistent in her description:

> Q [by the prosecutor].  Okay.  And then eventually Mr. Bell got
> the bat from Mr. Johnson?
>
> A.  Yes.
>
> Q.  Is that when he swung the bat at Mr. Johnson and hit him in
> the leg?
>
> A.  Yes.
>
> Q.  And that's when Mr. Johnson fell?

A.  Yes.

Q.  Okay. **And then Mr. Johnson was on the ground, correct?**

A.  **Yes.**

. . . .

Q.  **Mr. Bell hit Mr. Johnson again, correct?**

A.  **No.**

Q.  Didn't Mr. Bell hit Mr. Johnson more than once?

A.  Three times.

Q.  Okay. Did he hit him in the head?

A.  Yes, he caught him on the side of the head.

Q.  So he hit him on the leg, correct?

A.  Yes.

Q.  And he fell to the ground?

A.  Yes.

Q.  And he hit him in the head, correct?

A.  No, he hit him upside the head first.

Q.  So he hit him three times total?

A.  Yes.

Q.  Okay.  So the first hit you're saying he hit him upside the head?

A. Yes, the first hit.

Q. And Mr. Johnson just kept standing there?

A. He was standing, then he fell.

Q. All right. And then where did he hit him his second time?

A. On his leg.

Q. Is that when he fell?

A. Yes.

Q. Where did he hit him the third time?

A. Leg.

Q. He hit him on the leg twice when he was on the ground?

A. He hit him on the leg twice.

Q. So the first time he hit him in the head and he hit him in the leg and he fell?

A. Yes.

Q. **And then when he was on the ground he hit him one more time in the leg?**

A. **Hit him on the leg.**

Q. Okay. **When Mr. Johnson was on the ground, correct?**

A. **Yes.**

(ECF No. 17-4 at 32–34) (emphases added).

On re-direct examination, Ms. Ogletree testified that after Bell hit Johnson the first time (which was on the head, according to Ogletree), Johnson was still fighting back (ECF No. 17-4 at 35). Ogletree testified Johnson was not fighting back once he fell onto the ground (*id.* at 36).

Bell testified on his own behalf. He testified that he, Caldwell, and Johnson were living at Ms. Ogletree's house at the time of the incident (ECF No. 17-4 at 37–38). Bell testified Caldwell started an argument with him when he arrived at the house that morning (*id.* at 43–45). Bell testified Caldwell "was up on me," so he pushed her back (*id.* at 45). Bell testified Johnson was in the living room during the argument (*id.*). Bell testified Johnson went outside, came back in, and swung the bat at him (*id.* at 47). Bell testified Johnson missed him, swung the bat again, and hit Caldwell on the arm (*id.*). Bell testified Johnson got ready to swing a third time, so he (Bell) ran into Johnson's chest and grabbed the bat (*id.* at 47–48). Bell testified he and Johnson fell on the floor (*id.* at 48). Bell testified he got up and dragged Johnson out of the house (*id.*). Bell testified he was standing over Johnson, and they were "[t]ussling with the bat" (*id.*). Bell testified he let go of the bat and started backing out of the driveway into the middle of the street (*id.*). Bell testified Johnson "jumped up with the bat," threatened to kill him, and started swinging the bat at him as he was backing up (*id.* at 48–49). Bell testified he told Johnson, "come on, man,

go ahead, go ahead, go ahead" (*id.* at 49).  Bell testified Johnson hit him on his

shoulder (*id.*).   Bell testified he "rushed" Johnson and the two of them again

"tussled" (*id.*).  Bell testified he saw Caldwell coming at him with a bottle, so he put

his head in Johnson's chest (*id.*).  Bell continued:

> We tussled and we managed to fall over towards the (inaudible)
> school there between these two cars.  And when we fell over there,
> Michelle fell first.  So I fell on top of her and Gary fell on top of me.
> So Gary pushed me, and he was trying to punch me and get the bat from
> me, but he couldn't get the bat from me because at this time I had a
> good grip on it.  Then when I grabbed the bat from him, I was just
> swinging it out there.  When I swung it out, it hit him in the head.
>
> Q.  Where was Ms. Caldwell when this was going on?
>
> A.  Ms. Caldwell was (inaudible) when I swung the bat and she
> got up.
>
> Q.  Okay.  Then what happened?
>
> A.  Then I went over there.  I said, okay, now—I hit him on the
> leg.  Boom.  I said you ain't going to keep running at me.  I (inaudible)
> on the leg a few times.  I was tired, I was exhausted.  So . . .
>
> Q.  Why did you hit him on the leg?
>
> A.  (Inaudible) trying to come after me with the bat.

(ECF No. 17-4 at 49–50).

Bell denied hitting Caldwell on the arm with the bat (ECF No. 17-4 at 52).

He stated Johnson hit Caldwell in the house (*id.*).  Bell also denied he threatened to

kill Johnson (*id.*).   Bell admitted he had previously been convicted of twelve

misdemeanors involving dishonesty and six felonies (*id.* at 53).

On cross-examination, Bell testified that once he had sole possession of the

bat, he "just swung out" and "accidently" hit Johnson on the head (ECF No. 17-4 at

59).  Bell testified:

> Q [by the prosecutor].  Well, since you had the bat in your hand at this point, at that point, Gary Johnson was no longer threatening you with the bat, correct?

> A.  No.  He didn't threaten me (inaudible).  I had the bat to keep him from coming at me anymore (inaudible).

> Q.  And then that was when you swung the bat and hit him on the head?

> A.  I swung the bat out to keep him from coming at me or trying to do anything (inaudible).  Okay, now, bam.  I hit him on the head accidently.

> Q.  Accidently?

> A.  Yeah.

> Q.  Okay.  But you did swing the bat at him, correct?

> A.  Yes, sir.

> Q.  And that's what split his head open?

> A.  I don't know if it split his head open or not.  I just hit—I hit him on the head and on the leg.

> . . . .

> Q.  You heard about the injuries to his brain and his head?

A.  Yes, sir.

Q.  And you're saying that that occurred from the first hit?

A.  One hit.  And (inaudible) testified that it was one hit.

Q.  So after that one hit, okay, where he got hit in the head, you then hit him again on the leg?

A.  I hit him on the leg just so he can't keep coming at me.

Q.  But his head was already split open at this point?

A.  (Inaudible) split open.  You couldn't see no blood.  He had a little knot on his head.

Q.  So then you hit him on the head—I mean, on the leg?

A.  I hit him on the leg.  I hit him on the leg twice and I said, you'll stop running at me, man, I was tired, struggling.  I'm out of shape.  I'm 55 years old.  My pressure went up.  I was tired and everything.

Q.  But you did hit him on the leg two times after you hit him in the head, correct?

A.  Yes, sir.

(ECF No. 17-4 at 59–61).

On re-direct examination, Bell testified he hit Johnson in the legs because he didn't know the seriousness of Johnson's head injury and wanted to prevent Johnson from continuing to chase him down the street (ECF No. 17-4 at 66).  Bell admitted that once he hit Johnson in the head, Johnson did not continue to "come at" him, but

he (Bell) thought Johnson was going to continue to "come at" him  (*id.* at 66–68).

Bell testified:

> He was on the ground, wiggling a little bit.  I said, no, I'll hit him
> on the leg (inaudible) stop and leave me alone.  Boom boom.

(ECF No. 17-4 at 67).

During closing arguments, the State argued that even if the jury believed Bell's version of events, including Bell's testimony that Gary Johnson initially brought the bat into the house and swung at Bell, Bell admitted he eventually took the bat from Johnson and intentionally struck Johnson against his will even though Johnson no longer posed a threat (ECF No. 17-4 at 82).

Defense counsel argued that Bell's striking Johnson was justified, considering the events preceding Bell's striking Johnson (ECF No. 17-4 at 86–93).

In rebuttal, the State argued that once Bell grabbed the bat from Johnson, Johnson posed no threat; therefore, Bell had no reasonable basis to believe that any additional use of force was necessary to prevent imminent death or great bodily harm to himself, or to resist any attempt to commit aggravated battery upon him (ECF No. 17-4 at 100–01, 103–04).

Bell has not shown that the state court's adjudication of his *Brady* claim was based upon an unreasonable determination of fact.  The state court's factual findings

with respect to the evidence and arguments presented to the jury are supported by the trial transcript.

Bell also has not demonstrated that the state court's adjudication of the claim was contrary to or an unreasonable application of *Brady*. The court correctly set forth *Brady*'s materiality standard, i.e., whether there was a reasonable probability the jury would have reached a different verdict if Detective Alverson's supplemental report of her interview with Johnson at the hospital had been disclosed. Bell admitted that once the struggle moved outside the house and he obtained the bat from Johnson, Johnson was no longer threatening him and could not get the bat because Bell had "a good grip" on it, yet Bell swung the bat at Johnson three times, at least once after Johnson was down on the ground. Considering Bell's admissions, a reasonable jurist could agree with the state court's conclusion that there is no reasonable probability the jury would have returned a different verdict if the State had disclosed, and the jury heard, Johnson's prior statements to Detective Alverson, that he (Johnson)—after observing Bell hit Caldwell—brought the bat into the house and initially swung it at Bell in the house because he was afraid Bell might hit Caldwell again. For these reasons, the state court's adjudication of Bell's *Brady* claim is entitled to deference, and Bell is not entitled to federal habeas relief on Ground One.

As a final note, the state court assumed arguendo that Bell satisfied the suppression component of a *Brady* claim.  The Supreme Court has not "reach[ed] . . . the impact of a showing by the State that the defendant was aware of the existence of the documents in question and knew, or could reasonably discover, how to obtain them" in relation to a *Brady* claim.  *Strickler*, 527 U.S. at 288 n.33.  The Eleventh Circuit has stated that it does not read *Strickler* "to indicate that defense reliance on a general government representation of compliance with *Brady* establishes cause for failing to pursue available exculpatory evidence where collateral counsel had actual knowledge or reasonably could have discovered knowledge clearly suggesting that the prosecution may have misinterpreted that evidence as nonexculpatory."  *High v. Head*, 209 F.3d 1257, 1265 (11th Cir. 2000).  The Eleventh Circuit has also held that "[t]he government is not obliged under *Brady* to furnish a defendant with information which . . . with any reasonable diligence, he can obtain himself."  *United States v. Meros*, 866 F.2d 1304, 1309 (11th Cir. 1989) (citation omitted); *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1315 (11th Cir. 2005) ("Our case law is clear that where defendants, prior to trial, had within their knowledge the information by which they could have ascertained the alleged *Brady* material, there is no suppression by the government.") (internal quotation and alteration omitted); *see also Jennings v. McDonough*, 490 F.3d 1230, 1238–39 (11th Cir. 2007)

("[T]here was no suppression of [a] tape" where defendant had knowledge of a witness and "had within his knowledge information by which he could have ascertained her statement.").

Here, even if the State did not disclose Detective Alverson's supplemental report during discovery, defense counsel obviously became aware of it during trial.[6] If defense counsel believed that the report was material and beneficial to the defense, counsel could have notified the court that the report was not previously disclosed and requested an opportunity to review it and potentially conduct additional cross-examination of Gary Johnson.[7]  Because the defense had actual knowledge of Detective Alverson's interview with Johnson and her report documenting that interview, Bell's *Brady* claim could fail on the suppression component.

**B.    Ground Two:  Bell had no duty to retreat, pursuant to Florida's "Stand Your Ground" law, and thus was entitled to immunity from prosecution and a jury instruction stating such (restated).**

---

[6] The record shows that Detective Alverson's arrest report and supporting probable cause affidavit were filed with the court on April 16, 2012, the date after Bell's arrest and five days **prior to** Alverson's interview with Johnson at the hospital on April 21, 2012 (*see* ECF No. 17-1 at 31–34). Detective Alverson obviously supplemented her report with a description of her subsequent trips to the hospital to interview Johnson, including the content of her interview on April 21.

[7] If defense counsel used Johnson's statement to Alverson to infer that Johnson's trial testimony was the product of recent fabrication, the prosecutor may have been able to admit the prior consistent statement made by Johnson during his pre-trial deposition, i.e., that Bell first grabbed the bat while inside the house (*see* ECF No. 17-1 at 99, 105 (transcript of Johnson's deposition)). *See* Fla. Stat. § 90.801(2)(b).

Bell asserts Fla. Stat. § 776.032(1) does not impose a duty to retreat when necessary to defend against deadly force or great bodily harm from a co-occupant of the dwelling (ECF No. 6 at 11). Bell contends he was entitled to immunity under Florida's "Stand Your Ground" law, Fla. Stat. §§ 776.012, 776.013, 776.032(1) (*id.*). Bell states he did not present this claim on direct appeal due to "oversight" by appellate counsel (*id.*). Bell asserts he presented the claim in his first Rule 3.850 proceeding and his post-conviction appeal in First DCA, Case No. 1D16-0764 (*id.*).

The State asserts Ground Two is not cognizable on federal habeas review because it asserts error under state law, not a federal constitutional violation (*see* ECF No. 24 at 14–16). The State also asserts an exhaustion defense, arguing that Bell presented a somewhat similar claim in the first Rule 3.850 proceeding, but Bell relied solely on state law and failed to fairly present a federal constitutional claim (*id.* at 16–17). The State additionally argues that the state post-conviction court rejected Bell's claim on an independent and adequate state procedural ground, i.e., the claim should have been raised on direct appeal and therefore was not cognizable in a Rule 3.850 motion (*id.* at 18). The State contends Bell's claim is also without merit, because the trial transcript demonstrates that the jury was instructed on Florida's "Stand Your Ground" law (*id.* at 61–63).

In Bell's reply, he asserts the trial court gave conflicting jury instructions by stating that he did and did not have a duty to retreat (*see* ECF No. 42 at 25).  Bell asserts the conflicting instructions deprived him of due process guaranteed by the Sixth and Fourteenth Amendments (*id.* at 25–26).

Liberally construing Bell's § 2254 petition as asserting a federal due process violation with respect to the jury instructions and the trial court's failure to address the immunity issue, Bell did not fairly present a federal due process claim to the state courts in his Rule 3.850 motion.

Before seeking federal habeas relief under § 2254, the petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971) (citation omitted)). "To satisfy the exhaustion requirement, the petitioner must have fairly presented the substance of his federal claim to the state courts." *Picard*, 404 U.S. at 277–78.

A petitioner "fairly" presents the substance of his federal claim when he describes the claim "such that [the state courts] are permitted the 'opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.'" *Kelley v. Sec'y Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004) (quoting *Picard*,

404 U.S. at 277); *French v. Warden, Wilcox State Prison*, 790 F.3d 1259, 1270–71

(11th Cir. 2015) (reaffirming that a habeas petitioner must "present his claims to the

state court 'such that a reasonable reader would understand each claim's particular

legal basis and specific factual foundation.'") (quoting *Kelley*, 377 F.3d at 1344–

45).  Courts apply "fair presentation" principles "with common sense and in light of

the purpose underlying the exhaustion requirement—namely, giving the state courts

'a meaningful opportunity' to address the federal claim."  *Lucas v. Sec'y, Dep't of

Corr.*, 682 F.3d 1342, 1351 (11th Cir. 2012) (quoting *McNair v. Campbell*, 416 F.3d

1291, 1302 (11th Cir. 2005)).

　　"[A] petitioner with a claim that could arise under either state or federal law

must clearly indicate to the state courts that he intends to bring a federal claim."

*Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 458 (11th Cir. 2015).  A

petitioner does so, for example, by "including in his claim before the state appellate

court the federal source of law on which he relies or a case deciding such a claim on

federal grounds, or by simply labeling the claim 'federal.'"  *Lucas*, 682 F.3d at 1351

(quoting *Baldwin v. Reese*, 541 U.S. 27, 32 (2004)); *see also Snowden v. Singletary*,

135 F.3d 732, 735 (11th Cir. 1998) (concluding that petitioner's federal claims were

"fairly presented" when he provided enough information about the claims (and

citations to Supreme Court cases) to notify the state court that the challenges were being made on both state and federal grounds).

A petitioner does not satisfy the exhaustion requirement "merely by presenting the state court with 'all the facts necessary to support the claim,' or by making a 'somewhat similar state-law claim.'" *Lucas*, 682 F.3d at 1352 (quoting *Kelley*, 377 F.3d at 1343–44). Similarly, "a petitioner cannot 'scatter some makeshift needles in the haystack of the state court record. The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick.'" *French*, 790 F.3d at 1271 (quoting *Kelley*, 377 F.3d at 1345).

Review of Bell's operative pleading in the first Rule 3.850 motion (the proceeding in which Bell asserts he presented Ground Two) demonstrates he did not clearly indicate to the state courts that he intended to bring a federal claim (*see* ECF No. 17-5 at 38–39). Bell referenced only the state constitution, state statutes, and decisions of Florida state courts (*id.*). Bell's failure to fairly present a federal claim to the state courts is a sufficient basis to deem Ground Two procedurally barred from federal review.

There exists a second basis to deem Ground Two procedurally barred, i.e., the state court disposed of Ground Two on an independent and adequate procedural default principle of state law.

Where the state court correctly applies a procedural default principle of state law to arrive at the conclusion that a petitioner's federal claim is barred, the federal court is required to respect the state court's decision. *Bailey v. Nagle*, 172 F.3d 1299, 1302 (11th Cir. 1999) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).  In this instance, the federal court must determine whether the last state court rendering judgment clearly and expressly stated its judgment rested on a procedural bar, i.e., an adequate and independent state ground.  *Bailey*, 172 F.3d at 1303 (citation omitted).

A federal court may consider the merits of a procedurally defaulted claim if the petitioner can show both "cause" for the default and "prejudice" from a violation of his constitutional right.  *Sykes*, 433 U.S. at 84–85.  To establish cause, a petitioner must ordinarily "demonstrate 'some objective factor external to the defense' that impeded his effort to raise the claim properly in state court." *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

The Supreme Court has also recognized a "fundamental miscarriage of justice" exception to the procedural bar, which is satisfied where the petitioner

shows that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Id.* Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

*Id.*

In Ground Two of Bell's operative pleading in the first Rule 3.850 proceeding, Bell argued he was entitled to immunity from prosecution pursuant to Florida's "Stand Your Ground" statute, Fla. Stat. § 776.032, and Rule 3.190(b) of the Florida Rules of Criminal Procedure (ECF No. 17-5 at 38–39). Bell also argued he was entitled to a jury instruction on the law applicable to a "Stand Your Ground" defense (*id.*). The state circuit court rejected Ground Two on the ground that it was not cognizable in a Rule 3.850 motion because it should have been raised at trial or on direct appeal (*id.* at 65 (citing Fla. R. Crim. P. 3.850(c))).

Florida's rule that issues of trial court error must be raised on direct appeal is firmly established and regularly followed. *See Bruno v. State*, 807 So. 2d 55, 63 (Fla. 2001) (explaining that "[a] claim of trial court error generally can be raised on

direct appeal but not in a [R]ule 3.850 motion"); Fla. R. Crim. P. 3.850(c) (providing that issues that could have, or should have, been raised on direct appeal are not cognizable in a state post-conviction motion). Thus, the state court denied Bell's claim(s) on independent and adequate state grounds. *See LeCroy v. Sec'y. Fla. Dep't of Corr.*, 421 F.3d 1237, 1260 n.25 (11th Cir. 2005) (holding that the procedural requirements of Florida's Rule 3.850 constitute independent and adequate state grounds that preclude federal habeas consideration) (citation omitted); *see also, e.g.*, *Robinson v. Att'y Gen. of Fla.*, No. 17-13418-G, 2018 WL 11300378, at *4 (11th Cir. Dec. 26, 2018) (holding that a Florida post-conviction court's denial of a claim as procedurally barred because the argument should have been raised on direct appeal is an independent and adequate state ground).[8]

In addition, Bell cannot overcome this procedural bar because he has not shown cause for his failure to present Ground Two on direct appeal. Bell asserts the

---

[8] Bell appears to assert he also presented Ground Two in several post-conviction applications filed in the state circuit court after the court issued its ruling in the first Rule 3.850 proceeding (*see* ECF No. 6 at 13). The record demonstrates that the state circuit court denied Bell's post-conviction applications as impermissibly successive, pursuant to Rule 3.850(h)(2) (*see* ECF No. 17-10 at 112–15). Rule 3.850(h)(2) provides that a second or successive motion is an "extraordinary pleading" and may be dismissed if it alleges new grounds that could have been raised in a prior motion. *See* Fla. R. Crim. P. 3.850(h)(2). As noted earlier, the Eleventh Circuit has concluded that the procedural requirements of Florida's Rule 3.850 constitute independent and adequate state grounds that preclude federal habeas consideration. *See LeCroy*, 421 F.3d at 1260 & n.25.

failure to present Ground Two on direct appeal was caused by appellate counsel's "oversight."

Ineffective assistance of appellate counsel (IAAC) which rises to the level of a constitutional deprivation can serve as cause for purposes of a procedural default analysis. The issue of ineffective assistance must first be presented as an independent state claim and exhausted in the state courts. *Murray*, 477 U.S. at 488. In Florida, a claim of IAAC is actionable in a petition for writ of habeas corpus filed in the appellate court to which the appeal was taken. *See* Fla. R. App. P. 9.141(d); *Davis v. State*, 875 So. 2d 359, 372 (Fla. 2003).

The standard for evaluating an IAAC claim is the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citation omitted). The two components of an ineffectiveness claim under Strickland are performance and prejudice, and if an insufficient showing is made as to one, the court need not address the other. *Strickland*, 466 U.S. at 697.

The focus of inquiry under the performance prong of *Strickland* is whether counsel's assistance was "reasonable considering all the circumstances." *Strickland*, 466 U.S. at 691. Appellate counsel who file a merits brief need not (and should not) raise every nonfrivolous claim but, rather, may select from among them in order to maximize the likelihood of success of on appeal. *See Jones v. Barnes*, 463 U.S. 745,

753–54 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). Appellate counsel cannot be deemed ineffective for failing to raise issues "reasonably considered to be without merit." *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (internal quotation marks and citation omitted). Additionally, where an issue is not preserved for appellate review, appellate counsel's failure to raise the issue is not constitutionally deficient as it is based on the reasonable conclusion that the appellate court will not hear the issue on its merits. *See Diaz v. Sec'y Dep't of Corr.*, 402 F.3d 1136, 1142 (11th Cir. 2005); *Atkins v. Singletary*, 965 F.2d 952, 957 (11th Cir. 1992); *Francois v. Wainwright*, 741 F.2d 1275, 1285–86 (11th Cir. 1984).

To demonstrate prejudice under *Strickland*, the petitioner must show a reasonable probability that, but for his counsel's unreasonable failure to brief a particular issue, petitioner would have prevailed on appeal. *See Robbins*, 528 U.S. at 285; *Nyhuis*, 211 F.3d at 1344 (arguments omitted from the appeal must have been significant enough to have affected the outcome of the appeal) (citation omitted).

The state court record demonstrates that Bell presented IAAC claims to the First DCA in his state habeas petition, Case No. 1D16-3506 (*see* ECF No. 17-7 at 22–62). As Grounds Three and Seven, Bell argued appellate counsel was ineffective

for failing to argue that his due process rights were violated by the trial court's failure to make a pre-trial determination of whether he was entitled to immunity under Florida's "Stand Your Ground" statute and the trial court's failure to provide a jury instruction on "Stand Your Ground" (*see id.* at 34–36, 62).  The First DCA denied the petition on the merits in a one-word opinion, "Denied."  *Bell v. State*, 228 So. 3d 552 (Fla. 1st DCA 2017) (Table).

The First DCA's rejection of Bell's IAAC claims is entitled to deference. Bell's appellate counsel was not deficient for failing to argue a due process violation with respect to the trial court's failure to give a "Stand Your Ground" jury instruction, because the trial transcript demonstrates the court gave the jury instruction (*see* ECF No. 307–09 (trial transcript)).  Additionally, Bell's appellate counsel was not deficient for failing to argue error with respect to the trial court's failure to determine the issue of Bell's immunity from prosecution under Fla. Stat. § 776.032, because this issue was not preserved in the trial court.   The state court progress docket shows that defense counsel never filed a pre-trial motion to dismiss (*see* ECF No. 17-1 at 6–8 (progress docket showing filings from date of arrest to date of judgment)), which was required to properly raise the immunity issue in the trial court.  *See* Fla. Stat. § 776.032(4) (referencing pre-trial immunity hearing); Fla. R. Crim. P. 3.190(b)–(c) (requiring defenses such as immunity to be made by a

motion to dismiss). Because the immunity issue was not preserved, Bell's appellate counsel was not deficient for failing to raise it on direct appeal.

To the extent Bell asserts he is entitled to review of his procedurally defaulted claims through the "fundamental miscarriage of justice" exception, he has failed to make the required demonstration. As previously discussed, Bell identifies two items of "newly discovered evidence" which, according to him, demonstrate he acted in self-defense. One, Gary Johnson's statements to Detective Alverson during the hospital interview on April 21, 2012, in which Johnson stated he initially brought the bat into the house and swung at Bell. Two, the witness statement from Gail Jerome Brand, in which Brand states the following, in relevant part:

> l. I saw Gary come out of the house and get the bat from outside by one of the front windows in front of the house and went into the house with the bat.
>
> 2. A few minutes later I saw Gary and Victor coming out of the home struggling with the bat as Michelle was punching and hitting Victor with a bottle.
>
> 3. As they struggled with the bat going across the street, Michelle kept punching and hitting Victor with the bottle.
>
> 4. When they got across the street Victor was able to get the bat from Gary at which time he swung the bat to depend [sic] himself from the both of them and as he swung the bat, the bat hit Michelle as she through [sic] her arm up and I saw Gary go to the ground as Michelle fell on time [sic] of him.

5.  At this time Annette [Lanette Ogletree] who is Victor's girlfriend and Michelle [sic] mother came outside screaming and hollowing [sic] and this is when Victor turned around and went back to his yard.

6.  Michelle got off of Gary he [sic] was moving but he did not get up. This was only time [sic] Victor swung the bat to defend himself and get them off of him.

 (see ECF No. 17-5 at 75 (as noted *supra*, Brand's statement is signed and notarized but not sworn (see *id*.))).

The Eleventh Circuit has not decided whether *Schlup* permits a claim of actual innocence based on "new reliable" evidence of a complete affirmative defense that renders the conduct of conviction wholly noncriminal and requires acquittal.  *See Rozelle v. Sec'y, Fla. Dep't of Corr.*, 672 F.3d 1000, 1013–15 (11th Cir. 2012) (noting that other circuit courts differ on whether a complete affirmative defense to a crime—such as self-defense—shows factual or only legal innocence and declining to decide the issue).

With respect to Gary Johnson's statements during his hospital interview with Detective Alverson, Bell has not shown "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt" if they jury had heard Johnson's statements.  The reasons supporting this conclusion are discussed *supra* in Ground One.

The same is true of Gail Brand's statements (to the extent they are "reliable"). Brand's statements are largely cumulative of the testimony of Lanette Ogletree and Bell himself.  Additionally, a reasonable juror likely would have still convicted Bell even if Brand had testified to the facts included in Brand's statement.  As previously discussed, Bell admitted that once the struggle had moved outside the house and he obtained the bat from Johnson, Johnson was no longer threatening him and could not get the bat because Bell had "a good grip" on it, yet Bell swung the bat at Johnson, striking him in the head, and then struck Johnson twice more while he was "on the ground, wiggling a little bit."  Bell thus has not shown he is entitled to federal review of Ground Two through the *Schlup* gateway.

### C.    Ground Three:  Defense counsel waived Bell's due process rights to be present at a "deposition hearing" (restated).

Bell asserts defense counsel waived his federal constitutional right to be present at a hearing, which he describes as a "deposition hearing" or "attorney witness proceeding to perpetuate testimony" (ECF No. 6 at 13; ECF No. 42 at 29). Bell asserts he presented this claim in his first Rule 3.850 proceeding and subsequent post-conviction applications (*see* ECF No. 6 at 14–15).

The State asserts Bell presented a similar claim of ineffective assistance of trial counsel (IATC) in his first Rule 3.850 proceeding (*see* ECF No. 24 at 20).  The State asserts the state circuit court rejected the claim on state procedural grounds,

i.e., the IATC claim was "conclusory and insufficiently pled to state a prima facie basis for deficient performance and prejudice" (*id.*).  The State asserts Ground Three is procedurally barred for an additional reason—namely, because Bell abandoned the claim on appeal of the circuit court's decision (*see id.* at 21–23).  The State alternatively argues Ground Three is without merit (*id.* at 64–66).

In Ground Three of Bell's operative pleading in the first Rule 3.850 proceeding, Bell presented seven sub-claims of IATC (*see* ECF No. 17-5 at 40–41). As sub-claim six, Bell asserted defense counsel interfered with his right to testify by waiving his presence at a deposition to perpetuate testimony (*id.*).  The state circuit court disposed of Ground Three in its entirety as follows:

> Defendant raises claims of ineffective assistance of counsel based on seven allegations of deficient performance.  Defendant's allegations in this claim are conclusory and insufficiently pled to state a prima facie basis for deficient performance and prejudice.

(ECF No. 17-5 at 65).  Bell appealed the circuit court's decision to the First DCA (*see* ECF No. 17-5 at 118 through17-6 at 14 (Bell's initial brief)).  The First DCA affirmed the circuit court's decision per curiam without written opinion.  *Bell v. State*, 244 So. 3d 1015 (Fla. 1st CA 2016) (Table).

The court rejects the State's first procedural argument, i.e., that the state circuit court's rejection of the claim was based upon a state procedural rule.  In disposing of the claim, the state court did not base it disposition of the IATC claim

on a state procedural rule or bar; instead, the court considered the sufficiency of Bell's allegations, specifically, whether the allegations sufficiently alleged deficient performance and prejudice.    As discussed *supra*, deficient performance and prejudice are the two elements of an ineffective assistance claim under *Strickland*. Therefore, the state court's rejection of Bell's claim was an adjudication on the merits. *See Borden v. Allen*, 646 F.3d 785, 808–16 (11th Cir. 2011) (rejecting district court's conclusion that petitioner's ineffective assistance of counsel claims were procedurally barred where state court ruled that petitioner's vague assertions and unsupported conclusions were insufficient to withstand summary dismissal because they failed to contain the required specificity and full disclosure of the factual basis, and holding that state court's disposition was an adjudication on the merits; therefore, review of state court decision under deferential standard of AEDPA was appropriate); *Owen v. Sec'y for Dep't of Corr.*, 568 F.3d 894, 913 (11th Cir. 2009) (rejecting State's procedural default argument and holding that Florida Supreme Court's rejection of petitioner's ineffective assistance claim as insufficiently pled because petitioner failed to identify any specific evidence in the record supporting it, constituted a ruling on the merits and was not a procedural bar ruling); *see also Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1331 n.3 (11th Cir. 2012) (noting, in concluding that state court's rejection of claim for failure to plead a claim

under Alabama's criminal procedure rules, that: "We have also concluded that a dismissal for facial insufficiency under Florida's criminal procedure rules is a ruling on the merits.") (citing *Pope v. Sec'y for Dep't of Corr.*, 680 F.3d 1271, 1285–86 (11th Cir. 2012)).

Although the court rejects the State's argument that the state circuit court rejected Bell's IATC claim on a state procedural bar, the court agrees with the State's second procedural argument, i.e., that Bell procedurally defaulted Ground Three because he failed to present it in his post-conviction appellate brief.

In Florida, an appellant who files a brief when appealing a summarily denied post-conviction motion must raise and fully address in his brief all arguments on which he seeks appellate review. The appellate court will not review claims that are not briefed. *See Watson v. State*, 975 So. 2d 572, 573 (Fla. 1st DCA 2008) (holding that an appellate court "may review only those arguments raised and fully addressed in the brief"); *see also Roderick v. State*, 284 So. 3d 1152, 1154 (Fla. 1st DCA 2019) (holding that three of defendant's seven post-conviction claims were not subject to appellate review because the defendant did not argue them in his brief) (citing *Watson*, 975 So. 2d at 573).[9]

---

[9]    If an appellant does not file a brief when appealing a summarily denied post-conviction motion (which is not the case here), the appellate court is required to investigate all possible means of relief. *Watson*, 975 So. 2d at 573 n.1; *see also* Fla. R. App. P. 9.141(b)(2).

In Bell's initial brief to the First DCA, he did not include any argument on the IATC claim presented here in Ground Three, i.e., defense counsel's waiver of Bell's alleged right to be present at a deposition (*see* ECF No. 17-5 at 118 through17-6 at 14 (Bell's initial brief)).  Bell's failure to present Ground Three renders the claim procedurally defaulted for federal habeas purposes.[10]

Bell has not alleged caused for his procedural default of Ground Three.  Nor has he demonstrated he is entitled to federal review of any claim through the "actual innocence" gateway, as discussed *supra* in Ground Two.  Therefore, Bell is not entitled to federal habeas relief on Ground Three.

### D.    Ground Four:  Trial court abused its discretion and violated Bell's due process rights by allowing the prosecutor to bring out Bell's prior felony convictions (restated).

---

In the past, the Eleventh Circuit interpreted Florida law differently. In two unpublished decisions issued in 2007, the Eleventh Circuit held that when a Florida defendant does not receive an evidentiary hearing in his Rule 3.850 proceeding and appeals the circuit court's decision denying his motion, he satisfies the federal exhaustion requirement as to all claims raised in his Rule 3.850 motion, even if he files a brief and fails to address each issue in his appellate brief.  *See Darity v. Sec'y, Dep't of Corr.*, 244 F. App'x. 982, 984 (11th Cir. 2007); *Cortes v. Gladish*, 216 F. App'x 897, 899–900 (11th Cir. 2007).  However, the Florida case upon which the Eleventh Circuit relied in *Darity* and *Cortes*, that is, *Webb v. State*, 757 So. 2d 608 (Fla. 5th DCA 2000), ceased to be the decisional law of the Fifth DCA in 2009.  *See Ward v. State*, 19 So. 3d 1060, 1061 (Fla. 5th DCA 2009); *see also Maxwell v. State*, 169 So. 3d 1264, 1265 n.1 (Fla. 5th DCA 2015) (holding, in a post-conviction appeal where the lower court summarily denied relief without evidentiary hearing, that the defendant abandoned two of his three grounds by failing to raise them in his appellate brief) (citing *Ward*, 19 So. 3d at 1061).

[10] To the extent Bell asserts he exhausted Ground Three by presenting it in his subsequently filed post-conviction applications, the claim is still procedurally barred for the reasons discussed *supra* in note 8.

Bell asserts the trial court erred by allowing the prosecutor to bring out the fact that he had been convicted of prior felonies (ECF No. 6 at 15). Bell contends this violated his Fifth, Sixth, and Fourteenth Amendment rights to a fair trial (*id.*). Bell asserts he presented Ground Four in the first Rule 3.850 proceeding and his subsequent post-conviction applications (*id.* at 16–17).

The State asserts the same exhaustion argument as Ground Two. The State asserts Bell presented the claim in his Rule 3.850 motion, and the state court rejected it on state procedural grounds, i.e., the claim should have been raised on direct appeal (*see* ECF No. 24 at 23–24). The State additionally contends Bell abandoned this claim in his post-conviction appeal (*id.* at 24–27). The State alternatively argues Ground Four is without merit, because Bell knew, prior to his testimony, that the prosecutor was permitted to ask him about the number of his prior felony convictions, pursuant to Fla. Stat. § 90.610(1), and that is all that was admitted at trial (*see id.* at 66–68).

The record supports the State's exhaustion defense. In Ground Five of the operative pleading in Bell's first Rule 3.850 proceeding, Bell argued the prosecutor engaged in misconduct by "bringing into trial defendant prior [sic]" (*see* ECF No. 17-5 at 48). The state court rejected the claim on the ground that Bell was attempting to raise a claim that should have been raised at trial or on direct appeal and thus was

procedurally barred (*id.* at 65–66). This was an independent and adequate state procedural basis for dismissal. Therefore, the claim is procedurally barred from federal review.

Moreover, Ground Four is without merit. As the State points out, Fla. Stat. § 90.610(1) provides that "[a] party may attack the credibility of any witness, including an accused, by evidence that the witness has been convicted of a crime if the crime was punishable by death or imprisonment in excess of 1 year under the law under which the witness was convicted, or if the crime involved dishonesty or a false statement regardless of the punishment . . . ." Thus, by taking the stand at his trial, Bell was subject to having his credibility attacked by evidence of his prior criminal history.

Before Bell took the stand, the trial court warned him that if he chose to testify in his own behalf, his ". . . prior criminal history can come into play . . . ." (ECF No. 17-4 at 208). The trial court even explained to Bell how his criminal history would be brought out if he chose to testify:

> THE COURT: They can ask you if you've ever been convicted of a felony. And if you answer yes and they ask how many and your answer to that question is correct, they can't ask you anymore about that.
>
> THE DEFENDANT: Yes, sir.

> THE COURT:   And then they can ask you:   Have you ever convicted [sic] of a crime involving dishonesty, or misdemeanors involving dishonesty?  If your answer is yes to that and they ask how many and the answer is correct, they can't ask anymore.  But if you don't answer correctly to those questions, then prior certified copies of your judgments can actually be entered into evidence, and the jury can actually look at those things even though there would be an instruction given that it's not to be used to prove guilt at all but just go to the issue of credibility; do you understand all that?
>
> THE DEFENDANT:  Yes, sir.

(ECF No. 17-4 at 209).  Also before Bell testified, the parties stipulated that Bell had six prior felony convictions and twelve prior convictions for misdemeanors involving dishonesty (*see* ECF No. 17-3 at 180–81).

When the prosecutor asked Bell about his criminal history, Bell was prepared to answer the questions properly so that the details of his priors were not disclosed to the jury (*see* ECF No. 17-4 at 251, 263).  No error occurred in connection with the disclosure of Bell's criminal history.  Therefore, Bell is not entitled to federal habeas relief on Ground Four.

### E.   Ground Five:  Appellate counsel was ineffective for failing to file a motion to reopen the judgment and dismiss the charge and conviction on Count 1 on the ground that a State witness lied under oath and recanted his testimony (restated).

Bell asserts his appointed appellate counsel (appointed on March 28, 2013) was ineffective for failing to adopt and pursue Bell's pro se post-conviction motion, filed on April 1, 2013, in which Bell sought to reopen the judgment and dismiss the

aggravated battery charge and conviction on the ground that Gary Johnson's statements during his hospital interview with Detective Alverson (i.e., that Johnson initially brought the bat into the house and swung at Bell) demonstrated that Johnson lied during trial (*see* ECF No. 6-1 at 14; ECF No. 42 at 30–31).  Bell asserts he presented this IAAC claim in the first Rule 3.850 proceeding and his subsequently filed post-conviction applications in the state circuit court (ECF No. 6-1 at 14–15).

The State contends Ground Five is procedurally barred (*see* ECF No. 24 at 27–29).  The State alternatively argues the claim is without merit because there is no reasonable probability the state court would have granted a motion to dismiss (*id.* at 68–70).

In Ground Four of Bell's operative pleading in the first Rule 3.850 proceeding, Bell argued appellate counsel was ineffective in several respects (*see* ECF No. 17-5 at 42–45).  The state circuit court rejected Bell's IAAC claims on the ground that they were not properly raised in a Rule 3.850 motion (*see* ECF No. 17-5 at 65).  The First DCA affirmed the lower court's decision.  *Bell v. State*, 244 So. 3d 1015 (Fla. 1st DCA 2016) (Table).

Rule 9.141 of the Florida Rules of Appellate Procedure provides that the proper vehicle and forum for claims of IAAC is a petition alleging IAAC, in the court to which the direct appeal was taken.  *See* Fla. R. App. P. 9.141(d)(3).  This

rule provided an independent and adequate state procedural basis for the state courts' rejection of Bell's IAAC claims presented in the Rule 3.850 proceeding.

This leaves the question of whether Bell presented this particular IAAC claim in his habeas petition to the First DCA, Case No. 1D16-3506 (ECF No. 17-7 at 22–62). Upon review of Bell's state petition, the undersigned concludes he did not. Bell presented the following IAAC claims in his state habeas petition:

> Ground One: Appellate counsel was ineffective for failing to raise a claim of fundamental error based upon the trial court's reclassifying Count 1 from a second degree felony to a first degree felony where the jury's verdict included no specific finding as to whether Bell caused great bodily harm or whether he used a deadly weapon.

> Ground Two: Appellate counsel was ineffective for failing to argue that the trial court erred in denying the defense's motion for judgment of acquittal where the jury's verdict included no specific finding as to whether Bell caused great bodily harm or whether he used a deadly weapon, both of which were essential elements of the crime charged in Count 1.

> Ground Three: Appellate counsel was ineffective for failing to argue that Bell's due process rights were violated by the trial court's failure to make a pre-trial determination of whether Bell was entitled to immunity under Florida's "Stand Your Ground" law, which rendered the judgment void.

> Ground Four: Appellate counsel was ineffective for failing to argue that Bell's trial counsel was ineffective for failing to interview the defense witnesses listed in the defense's Reciprocal Discovery filed on December 31, 2012.

Ground Five:  Appellate counsel was ineffective for failing to argue that Bell's trial counsel was ineffective for announcing readiness for trial when counsel had received deposition transcripts only two weeks prior and did not provide them to Bell until just prior to jury selection.

Ground Six:  Appellate counsel was ineffective for failing to supplement the appellate record with the Reciprocal Discovery filed by defense counsel, which disclosed defense witness Terrance Hall.

Ground Seven:  Appellate counsel was ineffective for failing to argue that Bell was entitled to jury instruction on Florida's "Stand Your Ground" law.

Ground Eight:  Appellate counsel was ineffective for failing to argue that the trial court erred by denying the defense's motion for judgment of acquittal based upon the State's failure to prove an essential element of Count 1, i.e., the "deadly weapon" element.

(ECF No. 17-7 at 26–62).  None of these claims present an IAAC claim based upon appellate counsel's failure to move to reopen the judgment and dismiss the charge and conviction on Count 1, on the ground that a State witness lied under oath and recanted his trial testimony.

Bell cannot now return to state court to present his IAAC claim, because it would be time-barred.  *See* Fla. R. App. P. 9.141(d)(5) ("In no case shall a petition alleging ineffective assistance of appellate counsel on direct review be filed more than 4 years after the judgment and sentence become final on direct review.").

Bell has not alleged cause for his procedural default, and he has not demonstrated he is entitled to review of this or any other procedurally defaulted claim through the "actual innocence" gateway. Therefore, Bell is not entitled to federal habeas relief on Ground Five.

F.     **Ground Six: The body of the Amended Information "omitted the essential crime [of] aggravated battery."**

Bell contends his conviction and sentence violated due process because the caption of the Amended Information charged Aggravated Battery, but the body of the Amended Information did not (ECF No. 6-1 at 15; ECF No. 42 at 33–34). Bell asserts he did not present this claim on direct appeal because of "attorney oversight" (*see* ECF No. 6-1 at 15). Bell appears to assert he is attempting to present the claim in a habeas petition in the state circuit court by seeking an attorney to file it (due to the limitations on his pro se filings imposed by the state circuit court and the First DCA) (*id.*). In Bell's reply brief, he also appears to assert he presented the claim to the First DCA in Case No. 1D16-2309, which was his appeal of the circuit court's order denying his motion to correct illegal sentence (*see* ECF No. 42 at 31). Bell also references his state habeas petition alleging IAAC, First DCA Case No. 1D16-3506 (*id.*).

The State contends Ground Six is procedurally barred from federal review (ECF No. 24 at 29–34). The State alternatively argues the claim is without merit

because the Amended Information properly charged Aggravated Battery (*id.* at 70–71).

As Bell asserts, he presented Ground Six as Claim Three in his initial brief in First DCA Case No. 1D16-2309, the appeal of the circuit court's order denying his motion to correct illegal sentence (*see* ECF No. 17-6 at 68–71 (circuit court's order); ECF No. 17-6 at 123, 125–27 (Bell's initial brief)). The circuit court rejected Bell's claim that he was incorrectly charged, explaining that Bell was charged and convicted under Florida's aggravated battery statute (ECF No. 17-6 at 70). The First DCA affirmed the circuit court's decision without written opinion. *Bell v. State*, 202 So. 3d 407 (Fla. 1st DCA 2016) (Table).

### 1.    Clearly Established Federal Law

A charging document is sufficient "if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974).

### 2.    Federal Review of State Court Decision

Count 1 of the Amended Information charged Bell as follows:

**VICTOR JEROME BELL, on or about April 15, 2012**, . . . did unlawfully commit a battery upon **GARY BESS JOHNSON** by

actually and intentionally touching or striking said person against said person's will, or by intentionally causing bodily harm to said person, and in the commission of said battery did intentionally or knowingly cause great bodily harm, permanent disability or permanent disfigurement to **GARY BESS JOHNSON**, and in the commission of said battery did use a deadly weapon, to-wit: **A BASEBALL BAT**, in violation of Sections 784.045(1)(a)1. and 775.087(1), Florida Statutes.

(ECF No. 1 at 30 (Amended Information)).

Florida Statutes define Aggravated Battery as follows:

(1)(a) A person commits aggravated battery who, in committing battery:

1. Intentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement; . . . .

Fla. Stat. § 784.045(1)(a)1. "Battery" is defined as actually and intentionally touching or striking another person against that person's will, or intentionally causing bodily harm to another person. Fla. Stat. § 784.03(1)(a).

The Amended Information tracked the language of Florida's Aggravated Battery statute, Fla. Stat. § 784.045(1)(a)1., and the facts set forth in the charging document put Bell on notice of the charge against which he must defend, and enabled him to plead an acquittal or conviction if he was prosecuted for the same offense in the future. The state court's rejection of Ground Six was reasonable. *See United States v. Walker*, 490 F.3d 1282, 1296 (11th Cir. 2007) ("An indictment that tracks the language of the relevant statute is sufficient, as long as it also provides a

statement of facts and circumstances that give notice of the offense to the accused.")
(citing *Russell v. United States*, 369 U.S. 749, 765 (1962)).  Bell is not entitled to
federal habeas relief on Ground Six.

### G.     Ground Seven:   Jury selection was fundamentally prejudicial, unfair, and biased, in violation of Bell's constitutional rights (restated).

Bell asserts the prosecutor was permitted to strike every African American
juror, in violation of Bell's constitutional rights to due process and a fair trial (ECF
No. 6-1 at 16; ECF No. 42 at 34–35).  Bell asserts the error resulted in a miscarriage
of justice (*id.*).  Bell asserts he did not present this claim on direct appeal due to an
"oversight" by appellate counsel as well as trial counsel's failure to preserve the
error (ECF No. 6-1 at 16).  As with the claim raised in Ground Six, Bell appears to
assert he is attempting to present the claim raised here in a habeas petition or Rule
3.850 motion by seeking an attorney to file it on his behalf (*id.*).

The State contends Ground Seven is unexhausted and procedurally barred
(ECF No. 24 at 34–36).  The State contends such claims must be raised on direct
appeal, but Bell did not do so and is now procedurally barred from doing so (*id.*).
The State alternatively contends Ground Seven is without merit because Bell
affirmatively stated to the trial court that he was satisfied with the jurors who were
selected to serve on his jury (*id.* at 71–73).

Bell did not present Ground Seven on direct appeal (*see* ECF No. 17-4 at 137–55).[11]  And because Bell's judgment became final in 2014, he is now procedurally barred from asserting this unexhausted federal constitutional claim in state court. *See* Fla. R. App. P. 9.140(b) ("The defendant shall file the notice [of appeal] prescribed by rule 9.110(d) with the clerk of the lower tribunal at any time between rendition of a final judgment and 30 days following rendition of a written order imposing sentence.").

Bell may not assert IAAC as cause for the procedural default, because he did not present the First DCA with an IAAC claim based upon counsel's failure to raise the jury selection issue on direct appeal (*see* ECF No. 17-7 at 22–62 (amended habeas petition)).  *See Murray*, 477 U.S. at 488.  Therefore, Ground Seven is procedurally barred from federal review.

---

[11] Bell presented the following claims on direct appeal:

Issue One:  Whether the trial court committed error in failing to continue the trial at defense counsel's request.

Issue Two:  Whether the trial court committed reversible error in prohibiting the Defendant from calling Terrance Hall as a witness and allowing evidence of victim's disposition on preceding evening.

Issue Three:  Whether the trial court committed reversible error in allowing in photographic exhibits over trial counsel's objection.

(ECF No. 17-7 at 134–56 (initial brief)).

**H.  Ground Eight:  The Amended Information was improper under Fla. R. Crim. P. 3.140(d)(1) because it failed to allege the essential facts constituting the charged offense (restated).**

Bell asserts the factual allegations in the Amended Information were vague and insufficient to notify him of the factual basis for the charge in Count 1 (ECF No. 6-1 at 17; ECF No. 42 at 35–37).

Ground Eight is the same claim presented in Ground Six *supra*.  The same analysis applies, and Bell is not entitled to federal habeas relief on this ground.

**I.  Ground Nine:  The State withheld a key eyewitness statement from the court, Bell, and defense counsel, specifically, Gary Johnson's statement to Detective Lisa (Cutler) Alverson (restated).**

Bell asserts the prosecutor withheld Detective Alverson's supplemental offense report which included a description of her hospital interview with Gary Johnson (ECF No. 6-1 at 18–19; ECF No. 42 at 37–38).  Bell asserts he did not present this claim on direct appeal because the court did not provide the State Attorney's discovery file (ECF No. 6-1 at 19).  Bell asserts he presented the claim in a state civil action for damages filed in the Circuit Court for Escambia County, Florida, Case No. 2017-CA-615, but the court dismissed the civil action (*id.*).

The State asserts Ground Nine is not cognizable, and even if it was, it is unexhausted and procedurally barred (ECF No. 24 at 39–42).  The State further

argues that to the extent Bell is presenting the *Brady* claim presented in Ground One, the state court's adjudication of the claim is entitled to deference (*id.* at 75–76).

To the extent Bell asserts a *Brady* challenge to his conviction, he is not entitled to habeas relief for the reasons discussed *supra* in Ground One.  To the extent Bell seeks other relief for the prosecutor's alleged withholding of evidence (e.g., monetary compensation), his claim is not cognizable in this federal habeas proceeding.  Bell is not entitled to federal habeas relief on Ground Nine.

### J.    Grounds Ten and Eleven:  The prosecutor made improper remarks which influenced the jury to find Bell guilty (restated).

Bell asserts that fundamental error occurred at trial when the prosecutor offered his personal opinion to the jury and extended an open invitation to the jury to convict Bell for a reason other than his guilt of the crimes charged (ECF No. 6-1 at 20–23).  Bell did not identify the allegedly improper comments in his § 2254 petition, but he did so in his reply brief by pointing to pages 257–59 of the trial transcript (*see* ECF No. 42 at 38–40).  Bell admits he did not present Ground Ten or Eleven on direct appeal (ECF No. 6-1 at 21–22).  He asserts he presented them in the first Rule 3.850 proceeding (*id.* at 22–23).

The State contends Bell's claim of prosecutorial misconduct is unexhausted because Bell failed to present it on direct appeal and is now procedurally barred from

doing so (ECF No. 24 at 42–48).  The State alternatively contends Grounds Ten and Eleven are without merit (*id.* at 78–79).

The state court record demonstrates that Bell did not raise an issue of prosecutorial misconduct, based upon allegedly improper comments to the jury, on direct appeal (*see* ECF No. 17-4 at 137–55 (initial brief)).  Additionally, although Bell argued in the first Rule 3.850 proceeding, as part of Ground Six, that the prosecutor made improper comments to the jury, the alleged comments Bell identified were made during opening statements and direct examination of Gary Johnson (*see* ECF No. 17-3 at 49 (Rule 3.850 motion identifying pages 63, 73, and 75 of trial transcript)).  These are different comments than Bell identified in his reply brief in this § 2254 proceeding, which were made during the prosecutor's cross-examination of Bell (*see* ECF No. 42 at 38–40 (identifying pages 257–59 of the trial transcript)).  Furthermore, the state post-conviction court determined that Bell's claim regarding allegedly improper statements by the prosecutor were procedurally barred (*see* ECF No. 17-5 at 67).

Bell may not assert IAAC as cause for the procedural default of Grounds Ten and Eleven, because he did not present the First DCA with an IAAC claim based upon counsel's failure to raise the prosecutorial misconduct issue on direct appeal

(*see* ECF No. 17-7 at 22–62 (amended habeas petition)).  Therefore, Bell is not entitled to federal review of the claims asserted in Grounds Ten and Eleven.

### K.    Ground Twelve:  Appellate counsel failed to send Bell the complete discovery file in this possession.

Bell adds a final habeas claim in his reply brief.  He asserts his appellate counsel provided his sister with a complete copy of his file, but did not provide it to him (Bell) (ECF No. 42 at 41–42).  Bell asserts he presented this claim in a petition for writ of mandamus filed in his criminal case (*see* ECF No. 42 at 41–42; ECF No. 17-7 at 166 through ECF No. 17-8 at 7 (mandamus petition and attachments)).  The circuit court dismissed the petition without prejudice to Bell's filing a mandamus action in the court's civil division, not the criminal case (*see* ECF No. 17-8 at 8–9 (order)).  Bell appealed the order to the First DCA, Case No. 1D17-1652, and the appellate court affirmed the lower court's decision.  *Bell v. State*, 250 So. 3d 628 (Fla. 1st DCA 2018) (Table).

This claim is not cognizable on federal habeas.  Habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement.  *See Preiser v. Rodriguez*, 411 U.S. 475, 490 (1973) 28 U.S.C. § 2254 (a federal court may entertain a habeas petition "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States.").  Bell's claim that his appellate counsel failed to provide him with

his complete file does not challenge the legality of Bell's detention. Therefore, Ground Twelve does not state a cognizable basis for federal habeas relief.

## IV.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

"Section 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting § 2253(c)(2)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (citing *Miller-El*, 537 U.S. at 327). The petitioner here cannot make that showing. Therefore, the

undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the amended petition for writ of habeas corpus (ECF No. 6) be **DENIED**.

2.      That Petitioner's Motion for an Evidentiary Hearing (ECF No. 44) and Motion for New Trial After an Evidentiary Hearing (ECF No. 45) be **DENIED**.

3.      That a certificate of appealability be **DENIED**.

4.      That the clerk be directed to enter judgment accordingly and close the case.

At Pensacola, Florida, this $\underline{20^{th}}$ day of December 2021.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.